# UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

| | |
|---|---|
| AUDRA SANCHEZ, individually and on behalf of all others similarly situated; <br><br>**Plaintiff**, <br><br>v. <br><br>GENERALI U.S. BRANCH; AND GENERALI GLOBAL ASSISTANCE, INC. D/B/A CSA TRAVEL PROTECTION AND INSURANCE SERVICES; and CUSTOMIZED SERVICES ADMINISTRATORS, INC., <br><br>**Defendants**. | Case No. _____ <br><br>COMPLAINT—CLASS ACTION <br><br>JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

COMES NOW Plaintiff Audra Sanchez ("Sanchez" or "Plaintiff"), individually and on behalf of all other similarly situated persons, against Defendants Generali U.S. Branch; Generali Global Assistance, Inc. d/b/a CSA Travel Protection and Insurance Services, a/k/a and f/k/a Customized Services Administrators, Inc. (collectively "Generali" or "Defendants"), and brings this putative class action. In support thereof, Plaintiff makes the following allegations upon personal knowledge of the facts pertaining to herself and on information and belief as to all other matters, and states as follows:

### I. NATURE OF ACTION

This is a class action arising out of Defendants' acts and omissions amounting to a breach of contractual duty, under the terms of travel insurance policies Defendants issued to Plaintiff.

1

Defendants contracted to indemnify Plaintiff and all others similarly situated for pecuniary and other losses and damages incurred as a result of covered events that prevented insureds from taking their planned trip. Plaintiff's claims, as well as the claims of each proposed class member, are supported by the written provisions of the Master Policy for travel protection insurance underwritten and administered to them by Defendants, Master Policy No. (the "Policy"). *See* **Exhibit A**, The Policy. The Policy, and all CSA Travel Protection Policies at issue for all other class members nationwide, is identified as "Policy Form series T001."[1]

1. Defendants have caused substantial harm to Plaintiff and the proposed class by improperly refusing to issue reimbursement for trip cancellations explicitly covered by the Policy. Plaintiff has been completely denied reimbursement for her Trip Cancellation Claim ("Claim"). Upon information and belief, Defendants have effectively adopted an approach to categorically issue denials to every Claim arising during the natural disaster that was brought on by COVID-19. Defendants refused to pay COVID-19 related trip cancellations by others insured under the Policy, whether said claimants submitted claims requesting indemnity for: (a) the Maximum Limit(s) Per Person or Plan for Trip Cancellation as listed on their respective Schedules of Benefits; (b) actual damages incurred due to trip cancellations; or (c) the price of the premiums initially paid by the insureds for Policies.

2. Plaintiff brings this action on behalf of herself and all other similarly situated individuals. Plaintiff seeks to recover compensatory, as well as declaratory and injunctive relief.

## II. PARTIES

3. Plaintiff Audra Sanchez is a citizen of the United States residing in the City of Wichita in Sedgwick County, Kansas.

---

[1] *See* Exhibit A, The Policy, at page 15.

4. Defendant Generali U.S. Branch (or "Generali U.S.") is a Maryland corporation with its principal place of business located in New York, New York. Generali Group is licensed to do business in all 50 states as well as in the District of Columbia; specifically, Generali U.S. is engaged in the business of issuing insurance policies that are underwritten by Generali Group.

5. Defendant Generali Global Assistance, Inc. (or "GGA") is a New York corporation with its principal place of business in Bethesda, Maryland and branches in Alabama, Arizona, Florida, Georgia, Indiana, Kentucky, Maine, Maryland, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nevada, New Mexico, North Dakota, Ohio, Pennsylvania, South Dakota, and West Virginia.

6. GGA also does business under the name Europ Assitance USA, Inc. in Idaho and Michigan.

7. GGA is formerly and alternatively known as Customized Services Administrators, Inc. ("CSA"). CSA registered the trademark "CSA Travel Protection" in 2003.

8. CSA is an active California corporation with its principal place of business in California and branches in Alabama, Arizona, Arkansas, Colorado, Florida, Georgia, Hawaii, Indiana, Kentucky, Maine, Massachusetts, Minnesota, Missouri, Montana, New Mexico, Nevada, North Carolina, North Dakota, Ohio Oklahoma, Pennsylvania, South Carolina, South Dakota, Texas, Virginia, West Virginia, and Wyoming.

9. Five of the above-mentioned CSA branches are alternatively known as Generali Global Assistance and Insurance Services.[2]

10. Because of the unitary nature of Generali's businesses, all above-listed Defendant entities; Generali Group, Generali U.S., GGA, and CSA, shall hereinafter be referred to and treated collectively as "Generali" or "Defendants" unless addressed separately.

---

[2] Arkansas, Hawaii, Indiana, Maine, and Utah.

11. Currently and at all times relevant herein, Generali, through its practices and relationships with its subsidiaries and alternate business names under which it carries out a vast majority of its U.S. business, has consistently shown an existing unity of ownership, of operation, and of use sufficient to definitively establish the unitary nature of Generali's business. Specifically, in addition to the clear unity of ownership as set forth above, Generali's operational unity is evidenced by central advertising, accounting, and management in the United States; further, Generali has demonstrated unity of use in its general system of operation.

12. Generali does business in Kansas as Generali Warranty Services, LLC.[3] Generali Warranty Services, a Delaware corporation, is a wholly owned subsidiary of Generali US Branch.[4]

13. For the foregoing reasons, all Defendant Generali entities can be said to maintain the same registered agent in Kansas, Corporation Service Company, who can be served at 2900 SW Wanamaker Drive Suite 204, Topeka, Kansas 66614.

### III. JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class is a citizen of a different state than Defendant; there are more than 100 members of the Class; and upon information and belief the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs.

15. This Court has general personal jurisdiction over Defendants because Generali, by and through its U.S. entities, has purposefully availed itself of the benefits and protections of Kansas by conducting continuous and systematic business operations that are so substantial in this judicial

---

[3] Generali Warranty Services LLC holds an active registration with the Kansas Secretary of State, Business Entity ID No. 5307053.
[4] *Generali Warranty Services | Generali USA*, Generaliwarranty.com (2020), https://www.generaliwarranty.com/who-we-are/generali-warranty-services/ (last visited Jul 31, 2020).

4

district so as to render it essentially at home in this state. Generali U.S. underwrites insurance policies to residents of this district and holds an active license with the Kansas Department of Insurance[5] and, as stated above, conducts further insurance business in Kansas through its wholly owned subsidiary, Generali Warranty Services, LLC.

16. This Court has specific jurisdiction over Generali U.S., GGA, and CSA, pursuant to Kansas's long-arm statute.[6] Generali, by and through its U.S. entities, does business in Kansas by contracting with Policy purchasers to insure against risk and loss related in whole or in part to the state.

17. Venue is proper in the District of Kansas pursuant to 28 U.S.C. § 1391 in that all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the District of Kansas.

### IV. FACTUAL BACKGROUND

18. On May 10, 2020, Plaintiff used the online vacation booking website VRBO.com to book accommodations at a waterfront beach house in Rockport, Texas, where she and her husband planned to take their children for a weeklong beach vacation a couple of months later. The family intended to leave for Texas on July 24, 2020 and return on July 31, 2020.

19. Plaintiff paid approximately $3,500 through VRBO.com to reserve the vacation rental accommodations for the Rockport trip.

20. Upon checkout on VRBO's booking site, Plaintiff elected to pay an optional, additional fee of $254.53 for a travel insurance coverage plan ("CSA Travel Protection" or "Plan"). *See* **Exhibit B,** Sanchez CSA Policy Confirmation Letter Email 5.10.20.

### The COVID-19 Pandemic

---

[5] Kansas Insurance Dept. NAIC No. 19884, 19885.
[6] Kan. Stat. Ann. § 60-308.

21. On January 21, 2020, the first case of Coronavirus ("COVID-19") was diagnosed in the United States.

22. On January 30, 2020, the World Health Organization quickly declared COVID-19 a "Global Health Emergency;" a "Public Health Emergency of International Concern," on the next day, the President declared COVID-19 a public health emergency.

23. On March 11, 2020, the World Health Organization reclassified COVID-19 as a worldwide pandemic.

24. On March 24, a stay-at-home order began in Sedgwick county, Plaintiff's county of residence.[7]

25. On April 24, Kansas Governor Laura Kelly stated there were no plans to extend the stay-at-home order further, with plans to introduce "less restrictive mass gathering provisions" taking effect May 4.[8]

26. On April 30, Governor Kelly announced a phased lifting of restrictions titled *Ad Astra*, with non-essential businesses, churches, and dine-in restaurants allowed to re-open (subject to social distancing) beginning May 4.[9]

27. On May 10, when Plaintiff booked the trip, COVID-19 was not spreading in her community. The only people with whom Plaintiff would have been travelling within six feet of during or after the trip were her husband and children. Plaintiff is, on a daily basis, within at least six feet of her immediate family whether they are at home or on a trip together.

### Plaintiff's Trip Cancellation

---

[7] *COVID-19 Timeline of Events | Sedgwick County* (2020), https://www.sedgwickcounty.org/covid-19/covid-19-timeline-of-events/ (last visited Aug. 3, 2020).
[8] Wheat, Shawn. *"Gov. Laura Kelly does not plan on extending Stay-at-Home order past May 3rd" | WIBW-TV*, Gray Television, Inc., a Gray Media Group, Inc. Station (2020), https://www.wibw.com/content/news/Gov-Laura-Kelly-does-not-plan-on-extending-Stay-at-Home-order-past-May-3rd-569958931.html (last visited Aug. 3, 2020).
[9] Jim McLean. *"Kansas Is Set To Reopen With Restrictions On Restaurants, Stores and Churches" | KCUR 89.3*, (2020) https://www.kcur.org/news/2020-04-30/kansas-is-set-to-reopen-with-restrictions-on-restaurants-stores-and-churches (last visited Aug. 3, 2020).

28. On July 13, Plaintiff learned that her daughter had been directly exposed to COVID-19 while playing at a friend's house the day before.[10]

29. Plaintiff, who has an autoimmune disorder, was immediately concerned and called to schedule an appointment with her doctor on the next day, July 14.

30. Because of the sudden complications giving rise to the set of risks substantiating Plaintiff's concern over contracting COVID-19, Plaintiff's doctor directed her and her family to perform a two-week quarantine.

31. The doctor wrote a letter on Plaintiff's behalf, which Plaintiff submitted to Generali along with her Trip Cancellation Claim, requesting that Defendants "release [Plaintiff] from her obligations to her vacation package at this time" because the doctor directed them to quarantine until at least August 1. *See* **Exhibit C,** Sanchez Doctor's Orders for Quarantine.

32. Plaintiff submitted her Claim via the CSA online claims portal the next day, July 15, submitting the note from her doctor as well.

33. The Kansas Health Department's *Isolation and Quarantine | Frequently Asked Questions* publication[11] states: " If you have been told by a public health or other authority that you are a close contact of a laboratory confirmed case of COVID-19, you must quarantine yourself for 14 days after your last contact with the case." Thus, Plaintiff was required to undergo enforceable quarantine per her doctor's directions, being that the directions were made by her doctor not only in order to keep Plaintiff safe but also in order to comply with the Kansas Health Department (KHD) guidelines.

---

[10] Plaintiff has obtained the lab results of the individual who tested positively for COVID-19 on July 12, 2020.
[11] *Isolation and Quarantine | Frequently Asked Questions* | Kansas Department of Health and Environment (2020), https://www.coronavirus.kdheks.gov/DocumentCenter/View/134/Isolation--Quarantine-Guidance-and-FAQs-PDF---7-28-20?bidId= (last visited Aug 3, 2020).

7

34. On July 22, 2020, five days after her July 15 Claim submission, Plaintiff received an email form Generali denying her Claim. *See* **Exhibit D**, Sanchez CSA Denial Email 7.22.2020. Instead of covering Plaintiff's loss, which exceeded $3,000, Generali offered Plaintiff a voucher worth the amount of the premium she paid, $254.53.

35. Plaintiff did not request the voucher; however, on July 23, she received an email from Generali stating:

> Dear Audra Sanchez,
> We are pleased to let you know <u>your request for a travel insurance policy voucher has been approved!</u>
> Your voucher number is 20205VT174 for the amount of $254.53.
> Once you have booked your trip and have your new travel dates, simply give us a call at (888) 501-3025.
> …
> Thank you for trusting Generali Travel Insurance for your next trip!
> Sincerely,
> Generali Global Assistance-CSA Travel Protection

*See* **Exhibit E**, Sanchez CSA Travel Protection Voucher Correspondence, 7.23.2020.

36. Plaintiff did not book her family's travels on VBRO until after the Kansas stay-at-home order had been lifted on May 3, and Texas's stay-at-home order had been lifted on April 30.[12]

37. The road trip from Wichita to Rockport would have only involved travelling through was Oklahoma, which never issued any stay-at-home orders or travel restrictions.[13]

38. Plaintiff would not have purchased the Policy had it warned, whether expressly or impliedly, that Claims for COVID-19-related losses would be denied regardless of any underlying or extenuating Claim-specific circumstances. Nor would she have purchased the Policy had she

---

[12] *Coronavirus reopening Map of COVID-19 case trends, reopening status and mobility* USA Today, Gannett (2020), https://www.usatoday.com/storytelling/coronavirus-reopening-america-map/ (last visited Aug 3, 2020).
[13] *Id.*

8

been given any sort of notice, whether by Defendants or by VRBO, that the insurance she purchased would not cover Claims arising from COVID-19 in any way.

## "Covered Events" Under the Policy

39. The Policy provides coverage for Trip Cancellation, among other events.

40. The Trip Cancellation Benefit Rider states:

> Benefits will be paid, up to the amount in the Schedule, for the forfeited, prepaid, non-refundable, non-refunded and unused published Payments that you paid for your Trip, <u>if you are prevented from taking your Trip due to one of the following unforeseeable Covered Events that occur before departure on your Trip</u> to you or your Traveling Companion, while your coverage is in effect under this Policy.

### *Quarantine Coverage*

41. The Policy's "Covered Events" specifically provide for coverage in the event of "Being hijacked or Quarantined." "Quarantine" *is* a defined term specifically set forth in the Policy's DEFINITIONS section as follows: "QUARANTINE means the enforced isolation of your or your Traveling Companion, [14] for the purpose of preventing the spread of illness, disease or pests." *See* Exhibit A, The Policy, at *17.

## Generali's Blanket Denial of All Claims Filed as a Result of COVID-19 Effects

42. Generali, in "A Message to [their] Customers About Coronavirus," stated:

> <u>As of January 29, 2020, the Coronavirus (COVID-19) outbreak was considered a foreseeable event</u>. Consequently, any event(s) related to COVID-19 for all new travel policies purchased on or after January 29, 2020[15] may thereby be excluded in accordance with the terms and conditions of the Policy. <u>In addition, there will be no coverage for COVID-19 related losses occurring on or after March 11, 2020</u>, the date COVID-19 was formally declared a pandemic by the World Health Organization. Please note, our plans will not cover fear of travel. Customers are strongly encouraged to read their Description

---

[14] TRAVELING COMPANION "means a person who, during the Trip, will accompany you in the same accommodations." *See* Exhibit A, The Policy, at *11. *See also* *8 (FAMILY MEMBER, as defined by the Policy, includes: Traveling Companion(s) ; the Insured or Traveling Companion's Spouse; or *certain persons bearing a listed relationship to the Insured or Traveling Companion or Spouse of either).
*The Policy definition provides a bulleted list of specific individuals who qualify as Family Members due to familial or other close relationships.

9

    of Coverage or Insurance Policy (https://www.qeneralitravelinsurance.com/retrieve-policy.html) for details regarding their available coverage.

*See* **Exhibit F,** Generali COVID-19 Notice.

43. Despite unambiguous language in the policy, which is a fully integrated insurance agreement, Defendants breached the policy by failing to indemnify Plaintiff for the losses she incurred as a result of the forced cancellation of her travel plans due to a Covered Event.

## V. CLASS ACTION ALLEGATIONS

44. Plaintiff brings this action, individually, and on behalf of a nationwide class, pursuant to Federal Rule of Civil Procedure Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4), defined as follows :

**Nationwide Class**
All persons located within the United States that purchased Generali insurance plans accompanied by the Policy and were prevented from taking a trip as a result of a covered event during the COVID-19 pandemic who have incurred out of pocket Trip Cancellation expenses.

45. In the alternative to the Nationwide Class, and pursuant to Federal Rule of Civil Procedure, Rule 23(c)(5), Plaintiff seeks to represent the following state class only in the event that the Court declines to certify the Nationwide Class above. Specifically, a "State Class" consisting of the following:

**Kansas Class**
All persons in Kansas that purchased Generali insurance plans accompanied by the Policy and were prevented from taking a trip as a result of a covered event during the COVID-19 pandemic who have incurred out of pocket Trip Cancellation expenses.

46. Excluded from the class(es) are Defendants, any entities in which Defendants have a controlling interest, any of the officers, directors, or employees of the Defendants, the legal representatives, heirs, successors, and assigns of the Defendants, anyone employed with

10

Plaintiff's counsels' firms, any Judge to whom this case is assigned, and his or her immediate family.

47. **Numerosity.** The Class is so numerous that joinder of all members is impracticable. Due to the nature of the insurance involved, the members of the Class are geographically dispersed throughout the United States. While the exact number of Class members is information not readily available at this time, as only Generali possesses the data to determine a numerical figure to indicate the Policies sold throughout the US that have resulted in myriad claims Generali has received from consumers who would qualify as Class Members for purposes of this action, Plaintiff has reasonable belief that there are thousands of potential members in the Class. Generali states on its website that it has a presence in 50 countries in the world and earned a total premium income in excess of € 69.7 billion (approximately $80 billion) in 2019, serving 61 million customers worldwide.[16]

48. **Typicality.** Plaintiff's claims are typical of the claims of the other members of the Class she seeks to represent because Plaintiff and all Class members purchased identical coverage from Generali containing identical language regarding Trip Cancellation and Covered Events, and all Class members have been improperly denied coverage.

49. **Adequacy.** Plaintiff has retained counsel experienced in complex class action and insurance litigation. Plaintiff has no interests which are adverse to or in conflict with other members of the Class. Plaintiff will fully and adequately protect the interests of all members of the Class.

50. **Commonality.** The questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members, namely: whether the events caused by the emergence of the COVID-19 pandemic constitute Covered Events under

---

[16] https://www.generali.com

the Policy; whether the effects of any stay-at-home directives, "stop the spread" initiatives, or any other national health or safety warnings issued as a result of the COVID-19 pandemic that precluded Class Members from embarking upon or completing trips for which they purchased Policy coverage, trigger Covered Events under the Policy's terms; and whether the Policy requires Generali to reimburse Policy holders for expenses incurred as a result of trip cancellation due to events caused by the COVID-19 pandemic national disaster.

51. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

52. The interest of the members of the Class in individually controlling the prosecution of separate actions is theoretical rather than practical. The Class is cohesive, and prosecution of the action through representatives would be unobjectionable. The damages suffered by the Class are uniform and generally formulaic, and the expense and burden of individual litigation could preclude them form fair redressal of the wrongs done to them. Plaintiff anticipates no difficulty in the management of this action as a class action.

### COUNT I: BREACH OF CONTRACT

**(On Behalf of the Nationwide Class or, in the alternative, the State Class)**

53. The preceding paragraphs are incorporated by reference as if fully alleged herein.

54. Plaintiff and the class purchased insurance from Defendant and were thereupon issued the Policy.

55. The Policy is a valid and enforceable contract between Generali and all policyholders, including Plaintiff and class members.

56. Plaintiff and the class members substantially performed their obligations under the terms of the Policy and Class Policies.

57. Plaintiff and the class members suffered losses from events that should be reimbursed as results of Covered Events under the Policy.

58. Defendants have failed to compensated Plaintiff and class members for their respective losses as required by the Policy.

59. As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages that are continuing in nature in an amount to be determined at trial.

## COUNT II: DECLARATORY AND INJUNCTIVE RELIEF

### (On Behalf of the Nationwide Class or, in the alternative, the State Class)

60. The preceding paragraphs are incorporated by reference as if fully alleged herein.

61. An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendant, on the other, concerning the respective rights and duties of the parties under the Policy.

62. Plaintiff contends that Generali has breached the Policy by failing to timely pay Class Members for their respective losses for covered damages.

63. Plaintiff, therefore, seeks a declaration of the parties' respective rights and duties under the Policy and requests the Court to declare Generali's conduct unlawful and in material breach of the Policy so as to avoid future controversies that would allow for continual injustices such

as the one at issue here, where huge insurance companies take advantage of masses of consumers.

64. Pursuant to a declaration of the parties' respective rights and duties under the Policy and Class Policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policy; and (2) ordering Defendant to comply with the terms of the Policy, including payment of all amounts due to each respective class member under the stated Policy coverages that were extended to them upon purchase.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests relief and judgment against Defendant as follows:

(a) That the Court enter an order certifying the class, appointing Plaintiff as a representative of the class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the class;

(b) For a judgment against Defendant for the causes of action alleged against it;

(c) For compensatory damages in an amount to be proven at trial;

(d) For a declaration that Defendant's conduct as alleged herein is unlawful and in material breach of the Policy and Class Policies;

(e) For appropriate injunctive relief, enjoining Defendant from continuing to engage in conduct related to the breach of the Policies;

(f) For pre-judgment and post-judgment interest at the maximum rate permitted by law;

(g) For Plaintiff's attorneys' fees;

(h) For Plaintiff's costs incurred; and

(i) For such other relief in law or equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: August 5, 2020

                              Respectfully submitted,

                              **THE POTTS LAW FIRM, LLP**

By: */s/ Timothy L. Sifers*
    Timothy L. Sifers,   KS #19922
    Nathaniel K. Scearcy,   KS # 27561
    1901 W. 47th Place, Ste. 210
    Westwood, Kansas
    (816) 931-2230 (telephone)
    (816) 931-7030 (facsimile)
    Email:   tsifers@potts-law.com
              nscearcy@potts-law.com

*Counsel for Plaintiff*

## EXHIBITS

**EXHIBIT A,** The Policy.
**EXHIBIT B.** Sanchez CSA Policy Confirmation Letter Email 5.10.20
**EXHIBIT C,** Sanchez Doctor's Orders for Quarantine.
**EXHIBIT D**, Sanchez CSA Denial Email 7.22.2020.
**EXHIBIT E,** Sanchez CSA Travel Protection Voucher Correspondence, 7.23.2020.
**EXHIBIT F,** Generali COVID-19 Notice